So the first case, which has a lot of parties, I'll shorten its name to VI Derivatives versus VIBR in the United States of America. Mr. Firstname. Did I pronounce that right? Close enough, Your Honor. Which case is number one? VI Derivatives. First case. May I reserve a few minutes? Your request is granted. Thank you very much, Your Honor. May it please the Court, I'm pleased to be here this morning on behalf of the Vento family, Mr. and Mrs. Vento. Make sure you speak into that microphone. Thank you, Your Honor. Mr. and Mrs. Vento are present in court with me today. We flew over from St. Thomas on an early flight. The case that we have before the Court presents a relatively simple and discreet issue, and the issue... Bill, is the volume up high enough? Is the volume up high enough? For us. For us. Shall I continue, Your Honor? Thank you very much. Yes. Can you hear me now? That's a little better. Thank you. Don't worry, we'll... May it please the Court. That's better. Good morning, Your Honors. I'm pleased to be here this morning on behalf of the Vento family, who are the owners of a number of entities that are the subject of these proceedings. The Ventos are here in court with me today, and they flew over with me on an early flight from St. Thomas. The issue in this case is a relatively discreet issue that arose as a result of proceedings that were tried before Honorable Juan Sanchez, a district court judge, who was sitting as a Virgin Islands district court judge. The issue came up after the proceedings, the trials that were being held before Judge Sanchez were concluded. And the issue came up because the attorney, Mr. Stuart Gibson, who was the lead trial attorney for the United States government, in connection with the claims that the government was making that the Vento family owed the IRS millions of dollars in taxes, disclosed that he was not admitted to practice law in the Virgin Islands. He was not admitted to practice law in the state of Minnesota, and he was not able to be appearing in connection with the proceedings that he previously had been... Mr. Furstein, Mr. Gibson was not the only attorney representing the United States government in that case, was he? No. Darrell Oliphant was present throughout the proceedings, however, as the team leader, and as the lead trial attorney, and as the driving force behind the government's intent to target Mr. Vento. Mr. Gibson signed every document. He filed the interpleader action. How are you prejudiced by any of that? The prejudice is extreme. Although we've indicated that when there is a fraud on the court, that prejudice is not required, I believe that the most significant harm that was caused to the Ventos was when Mr. Gibson, in front of Judge Sanchez, came in and said, I want to introduce this document so that it can be a part of the record in this case. The document was dated October the 25th of 2004, and it was authored by Mr. and Mrs. Vento's lawyers, Handler, Thayer, and Duggan. And what it did was it told their clients, confidentially, that there may be difficulty with this structure that relates to private annuity agreements that were erected in the year 2000. You said the document may have somehow been prejudicial to your clients, but for sake of this argument, we won't hold your victory against them. You prevailed, eventually, at least for the Ventos. For the parents. For the parents in our court. We won't hold that against you on this argument. Thank you. But, as Judge Nygaard said, where's the prejudice to your clients? I'm going to explain it in this way, if I may, and it's kind of a practical way that cuts beyond what we may see in written decisions. When you have an attorney who is licensed to practice law taking such an active role, I'm going to compare it to a steamroller coming into a Virgin Islands court to target this family because they moved to the Virgin Islands and calls this family tax evaders. Calls them tax thieves. Isn't your complaint really, I mean, Mr. Gibson is the visible source of your irritation to your clients, but it's really the IRS. It's really the government. He was there on behalf. If he wasn't there, someone else would have been there taking that position. In all likelihood. With all due respect, Your Honor, I do not believe, had a lawyer who had taken proper CLE courses, who would have been aware of the provisions of 28 U.S. Code 530B, the Dave Murtha Amendment, I do not believe that he would have come in and said, I got this highly critical attorney-client document off of the Internet, and now I'm going to cross-examine not only Mr. Vento about it, but I'm going to cross-examine the lawyer who prepared the original plan that we are attacking. Now, Your Honor, if, and I've been going out to recent. Mr. Fersley, there's only one thing wrong with that argument, and that's that your entire brief is based on this attorney perpetrating a fraud on the court. Yet you never raised that argument in the district court, and I just a couple, two days ago, read your reply brief. You didn't even answer the answering brief of the government where they accused you of never raising that and waiving the argument. So how is the argument of fraud on the court, even before us, as a legal matter? When you look at practically speaking, when you look at this issue, when it comes up, the first thing that a lawyer does is he says, wait a minute, I don't know what's going on here. Yeah, but you never raised the fraud on the court issue in the district court, and you didn't reply to the government's answering brief that it was waived in the district court. Your reply brief never addressed it. Not one word did it address the government's position that this argument is not even before this court of appeals. With all due respect, Your Honor, I think that our original brief in a statement of facts that quotes the colloquy between Magistrate Barnard that says to Mr. Gibson, are you admitted here? And Mr. Gibson doesn't say whether he's admitted or not, but then the U.S. attorney comes in and says he doesn't have to be admitted. And Judge Barnard then comes back and says, quote, it's customary. Subject to his admission, we can proceed. Again, at the appendix, page 28 through 30, subject to his admission. Everything you say is true, but the rules of this court require, in order to make an argument for the panel, it has to be raised in a point of law, an issue presented or otherwise, in order for your adversary to address it, not the arguments or the disposition as you've set forth in the appendix. So I'm not going to speak for the government, let them talk for themselves, but their position is you're arguing about something that's not before the court. Well, Your Honor, when the issue comes up and I make the motion for an evidentiary hearing, which is what we asked for, and for discovery, the specific reason for that was so that we could find out what happened, and we haven't had that. Well, I understand that, but you never raised in any issue presented in your briefs that the government perpetrated a fraud on the court so that the court has been defrauded in its decision making. Your Honor, litigation is not something that you look at in the confines of a snapshot. When we found out about it, we brought the motion, we asked for discovery, we asked for information, and what I have in my brief is what we found out during and after the proceedings took place in front of Judge Sanchez, who, Your Honor, I believe is as much a victim of this conduct as the Ventos. Judge Sanchez was led down the primrose path to believe that the Vento family were tax cheats and liars and evaders and that they were saving $9 million as a result of moving to the Virgin Islands. It was said again and again, and finally, Mr. Gibson withdraws that. What he did was he poisoned the entire proceedings against the Ventos, and as a result of that, the Vento family was unable to have a fair trial. They were unable to have due process of law. When he came in and he grabbed something that he says is off of the internet, which we didn't know at the time. I was in trial counsel. I learned about this after bringing the motion in front of Judge Sanchez saying, I have to find out about this. This is an issue. This is a due process of law issue that relates to the Ventos family ability to present their case, and I find out that it was grabbed from another case that was sealed, and he takes it out of the case where there's a motion for a protective order and lies and says it came off of the internet, making the court believe that it was a public document is egregious and it tainted the entire proceeding. Well, you requested discovery and an evidentiary hearing. That's all we wanted. And in the record, through Mr. Gibson's disclosure, there is an explanation as to why and for how long he was unlicensed to practice or in the state of Minnesota.  And what else? What else is this evidentiary hearing going to develop for you? What else is discovery going to develop for you that you don't and what the court and the court doesn't already know? When you have the ability to determine what Mr. Gibson did, when you have the ability to take a look and see who he directed to get information that should never have been brought in to a court that was designed to poison the proceedings so that Mr. and Mrs. Vento could never have a fair shake. I believe that we're entitled to learn. What did Mr. Gibson say to Ms. Oliphant? Did Ms. Oliphant say to him, wait a minute, Stuart, you can't introduce this. It's illegal. You're going to try to bring in evidence that is improper. You have to, and under the federal rules, 26, the new electronic disclosure provisions, and this has happened to me. When I get a document that's attorney client, and it's happened, and I look at it and I read it, inadvertently turned over to me. I have an obligation to call my adversary and say, John, listen, I got something over here. I'm going to send it back to you, and I'm going to destroy it. Mr. Gibson did the opposite. He turned around. He gathered this information. Why? To harm the Ventos so that that would spill over in front of Judge Sanchez's mind and destroy anything that came out of the Ventos' mouth. And then he put the cream, then he put the icing on the cake. He goes and he puts in more and more and more. The $9 million claim. The SO that he says, the SO that was not valid at the IRS. The gravamen of your whole complaint is that he was not admitted. Now, given all that you say is true, is there any evidence anywhere on this record that that failure was anything other than inadvertence? That's what it all rests on. All the stuff you're saying all rests on the fact that he was not admitted. Right? Your Honor, with all due respect. Right? With all due respect, when you are admitted, you have CLEs. When you have CLEs, you're taught about ethical obligations of prosecutors that are much different. You didn't answer my question. It's all built on the fact that he was not admitted. Correct? That is the issue. That is the issue. What's this? If he had been admitted properly. Yes. What could he have done? What did he do in the state that he was in that he couldn't have done if he had been admitted? How about take attorney-client information and put it in front of a client when he should never be questioned about those things? How about fair it out? Well, if he would have done that as an admitted attorney, what's the damage to Gibson here, prejudice to Gibson, if he had been admitted and he did the exact same things he did in his unadmitted status? What's the damage to Gibson? The damage to Mr. Vento. Your Honor, I think that had he been admitted and had he taken the courses that require that he take in order to be advised of the changes in ethics, the changes in obligations that government attorneys have, not just to prosecute a case but to assure that justice is being done, that he would not have done these things. And it was years, years before he had gone back and presumably taken those courses to be readmitted. And now he resigns. Okay. We'll hear from Mr. Clark and then we'll have you back on rebuttal. Thank you very much. Mr. Clark. May it please the Court. The district court has entered final judgments with respect to all three of the issues that were raised by the pleadings in this case. It held a bench trial on the residency issue, that is whether the Ventos were residents of the Virgin Islands at the end of 2001. At the end of that bench trial, the district court found that all five of the Ventos were residents at that time. The taxpayers appealed. This court, in a lengthy opinion, reversed as to the parents and it affirmed as to the daughters. In that appeal, the taxpayers raised no objections and no complaints about any evidentiary matters that were raised during that trial, and they raised no complaints or objections about the conduct of any of the attorneys, any of the government's attorneys during that trial. The second issue was the Ventos investment in this illegal tax shelter, a son-of-loss tax shelter. The government filed a motion for partial summary judgment on that issue, and the taxpayers did not even contest that. In their response, they actually admitted that, quote, the investment lacked economic substance. And then the third issue dealt with the limited liability companies of the three daughters, and there was a separate bench trial on that, and at the end of that bench trial, the district court agreed with the government that there had been an anticipatory assignment of income to various entities in the Cayman Islands. That case is currently on appeal before this court. A briefing is stayed in that case, and it's in the mediation program now. And now after the final judgments have been issued as to all of those issues that were raised by the pleadings, the taxpayers now want to reopen discovery and conduct an evidentiary hearing on this bar status matter. They never explained to what end that they want to take this discovery or to have this evidentiary hearing. They never explained in any of their written materials what might be accomplished by that. And indeed, they cite no law as to why it would even be justified. There's no, I mean, they suggest in their motion to the district court, they suggested that they want to determine whether or not as a result of the inactive bar status, all of the actions taken by the government below are void. Mr. Clark, you have to admit on behalf of the government that this is an embarrassing situation, is it not? We won't deny that, Your Honor. Okay. And that Mr. Gibson should not have participated in this case in light of his bar status. We admitted that in the letter to the court, that he was unauthorized. And Mr. Gibson admitted that? Yes, he did, and on the Department of Justice letter. Go ahead. I mean, the question I think for our court is a legal question, and that is whether or not Judge Sanchez used the, properly analogized this situation to a situation where there was attorney misconduct, and where attorney misconduct exists in the case of Forrest v. Balot, which was decided by our court in 2005, whether or not that was the right statement to use in evaluating the request that was filed by the Ventos et al. for discovery in an evidentiary hearing. Well, I think it is, Your Honor, because I think that if there was no prejudice, Okay, now tell us, if you think it is, tell us why you think it is. Tell us why that's the more proper standard as opposed to looking at this question as strictly a matter of fraud on the court. Well, Mr. Gibson was an attorney. He was simply on inactive status, and his letter said that he had learned on October 18th that he was inactive, and he corrected that, and by October 25th he was active. So, I mean, he was an attorney, albeit not authorized to practice law. The trial proceeded, and there was no impediment by reason of Mr. Gibson's bar status to the taxpayer's ability to put on their case. There was no apparent infirmity in the district court's ability to hear the case and to impartially adjudicate the case. And, yes, although this was an embarrassment for the government, just the orderly proceedings of the litigation took place, and it's almost a situation of no harm, no foul within the context of this proceeding. Now, whether or not there might be any other consequences outside of this proceeding to Mr. Gibson, that's not part of this case. Well, you're trying to make it as if the only person that was hurt here is the government and not your adversary, but are we putting the cart before the courts? Why shouldn't the appellant at least have the opportunity to conduct some discovery into the possible effects that Gibson was not authorized to practice law and the various representations and so forth so that we can get to the bottom of this and see what's going on? Well, Your Honor, all of the discovery in this case and all of the trial proceedings were out in the open. It's all a matter of public proceedings. But not on this issue. The issue of his unauthorized practice was not the issue litigated. There was a tax issue litigated.  I mean, anyone could see whether or not there was any harm to the taxpayers. Well, that's not so. Wouldn't any evidence of prejudice be in the government's possession and control? And shouldn't the appellant have the opportunity to see what's going on in your file? They're on the outside. They're not on the inside, you know. Well, I don't even know what possible prejudice there would be or what possibly could be found. Well, you heard it about two seconds ago when the appellant was arguing. He wants discovery to discover that prejudice. Well, to find out. I mean, one example he gave was what Ms. Oliphant, who was one of the government's attorneys, might have said to Mr. Gibson about whether he can do this or he can't do this. But I don't even know if that would be discoverable. I mean, I think that would be privileged because she was an attorney. But in any event, regardless of what she might have told him about what he can or can't do, nevertheless what he did is all out in the open. And this court can see for itself whether or not there was any harm to the proceedings below. Judge Sanchez certainly did not think that it caused any harm to the proceedings. He saw it as strictly an administrative matter that had no effect on the conduct of the trial of the case. And since he presided over the case, I think that this court ought to give some deference to his decision. I mean, he sat there. He presided over the entire proceedings and saw no harm done to the proceedings. You say that we should not consider the appellant's fraud on the court argument because they did not properly raise it in the district court. But didn't they, in effect, raise it in the way they cast their claim in seeking discovery? Well, I would not agree to that, no. I don't think that their motion to the district court could be fairly raised as raising fraud on the court argument. What they said was that they need to take discovery because they want to find out whether or not all of the actions taken on behalf of the government are void. And that's the extent of what they told the district court. The fraud on the court argument just appeared in their opening brief on the appeal. So we do maintain that it was waived. But even if it wasn't waived, they've fallen far short of meeting the demanding standard that this court has required in prior opinions. Don't we have the inherent power to inquire into the integrity of our own judgments? And under that power, in face of the allegation that's being made here, don't we have the right to look at whether or not this should be a different standard? Well, yes, Your Honor. I mean, this isn't exactly the same as the attorney misconduct that was enforced. This is a different case. In that case, they were actually referring to specific instances of misconduct in the course of the proceeding. Here, although they say that the prejudice to them may be certain acts that the government through Mr. Gibson took, the issue here is whether or not his lack of active bar membership was a fraud on the court. Right. And I think this court always does have the inherent authority to look to see whether or not there had been a fraud on the court. As a matter of fact, Rule 60B of the Federal Rules of Civil Procedure specifically provide for that. I mean, Rule 60B provides for the instances in which a party might seek relief from a final judgment, and the taxpayers don't even cite it, that rule, much less rely upon it. But Rule 60B does specifically state that nothing herein prevents the court from setting aside a judgment or getting relief from a judgment for fraud on the court. But in any event, this court has described fraud on the court as a scheme to interfere with the judicial task of impartial adjudicating, such as by impeding the opposing party from fairly presenting his or her case. And that just didn't happen in this case. The taxpayers below were represented by ABLE counsel. They had every bit as much opportunity as any other litigant to put on their case, and there's no indication whatsoever that Judge Sanchez was impeded at all in impartially deciding the issues that were raised before him. Now, the main point of, I guess, prejudice that the taxpayers now raise, which, by the way, they did not raise below. They did not raise on their opening brief on appeal. We saw it for the first time in their reply brief on appeal, and it's the centerpiece of their argument today at the oral argument is this letter from their attorney, which was introduced in the second bench trial regarding the daughter liability companies. Now, since it wasn't raised on a reply brief, we had no opportunity to submit anything in writing in response to that. But I will say that that document was submitted in the second bench trial. The taxpayers' attorneys objected. There was a discussion and argument before Judge Sanchez about the admissibility of the evidence, and Judge Sanchez ruled that it was admissible as evidence. Now, if there is any contention that that letter was erroneously admitted, they still have the appeal pending before this court with respect to the daughter LLC cases, and I think that's the proper venue to raise that. But we dispute, again, we had no opportunity to get into this because it was first raised in the reply brief, but we dispute several of the things that are said in brief. Number one, the citation for the case that it came from in the appellant's reply brief is incorrect. It was actually from another case because the Exhibit 53, verse 2, has a different caption number at the top. And Judge Sanchez ruled that the reason it was admissible was because the DeVentos had actually sued their attorney, and once you sue your attorney, Judge Sanchez's theory was, then you can't pick and choose what part of what he told you you can introduce in the evidence. You've essentially waived the attorney client privilege with respect to any communications. And that is the basis upon which Judge Sanchez allowed that into evidence. But in any event, I think the proper venue for contesting the admissibility of that would be an independent appeal in the daughter LLC cases. Otherwise, the only prejudice and possible prejudice that the taxpayers speak about in their papers, just a number of other evidentiary objections or evidentiary matters, including that they make a big deal of this $9 million swing in potential tax liabilities, depending upon whether they're in the Virgin Islands or the United States. Well, this again goes to Judge Sanchez's impartiality. Reading the appellant's brief, it's as if they're suggesting that by reason of his inactive bar status, Mr. Gibson had some sinister ability to be able to persuade Judge Sanchez to make evidentiary rulings that he would not have made if Mr. Gibson had been an active member of the bar. Well, I think that that's just, I think that's a silly notion. I think that Judge Sanchez was able to hear and consider all of the arguments that were made on the evidentiary matters and that, as I said, in the residency trial, none of those matters were raised on appeal. Well, the appellant's position is if he had taken the continuing legal education courses, he would have known some of the things he was doing were highly questionable. I don't want to say unethical. I don't want to say anything. But it wouldn't be done by a practitioner who is concerned of doing the proper thing as an officer in the court. Why doesn't that make sense? Well, because, Your Honor, whether or not he was right or wrong, I mean, even admitted attorneys make incorrect or erroneous offerings of evidence, and you have the impartial judge. Well, first of all, you have an opposing party, an adversary, who's framing the issue before the judge, and you have the impartial judge making the evidentiary rulings. Well, Your Honor, that's doing the unethical conduct of practicing without a license to do so, and why, you know, that's the way he practices law. He doesn't care about the proper decorum, the proper rules, the proper ethics. He didn't even care about his bar status. He didn't follow it. He didn't follow that. You could say this is a pattern of activity. All of us are judged by our past and what we are going to do in the future. I would judge him the same way. Well, Your Honor, my time is up, but, again, I can only go back to Judge Sanchez's rulings. He presided over the trial. I mean, he did not think that this had any negative effect on the conduct of the trial or on his ability to make an impartial decision, and I think that there's no reason for this Court to find that he abused his discretion in denying the motion for discovery in an evidentiary hearing. Okay, Mr. Clark, thank you very much. Mr. Feuerstein. Thank you very much, Your Honor. Simply, when Judge Barnard, Magistrate Barnard, said to Mr. Gibson, subject to your admission, subject to your admission, you may proceed, on two occasions. Subject to your being admitted before this Court, that was a condition precedent to Mr. Gibson going forward. Mr. Gibson ignored it. I sit here in front of you, having practiced law in these communities for many, many years, and I can only imagine what would happen to me or another private practitioner if I had done the same thing that Gibson had done to Magistrate Barnard, to District Court Sanchez, to the Justice Department. You'd probably be cited by the New York Bar. I probably would be cited, and I probably would be suspended. Okay. It would be very, very serious. There shouldn't be two separate standards. Isn't that the issue that we have here? It's worse, and I'm going to tell you why it's worse. We have a, it's the Minnesota Bar. In Minnesota. Isn't the issue, the issue is twofold, I would see it here. The Minnesota Bar, although they admitted they gave him back his license on October 25th, if this information was brought to their attention, they may subsequently suspend Mr. Gibson. In addition, the Virgin Island Bar or the Bar of the District Court of the Virgin Islands could consider this information and consider disciplinary action against Mr. Gibson. Isn't that where this issue lies? It's even further, Your Honor, because I have to go back to the Minnesota statute, because that's really where this kind of piggybacks from, because the penalty is more severe than Your Honor has indicated. It says failure to comply, noncompliant status, administrative suspension. A lawyer or a judge who fails to meet all the criteria to be on either active or inactive status is placed on noncompliant status, and the right to practice law in this state is automatically suspended. Mr. Gibson was not authorized to practice law in any state. It doesn't say anywhere in there that all the actions taken are therefore void, does it? I agree with you, Your Honor, it does not. It does not. It does not say that. And I'm not surprised that it doesn't say that. Well, I would follow, you could say. Couldn't you say that's automatically to be assumed? If you can't practice law, anything you do is void aboditio. That's the way I look at it, and I think that's the way my clients would look at it if I had done the same thing and there shouldn't be two separate standards. Your basic position here is that the government lawyers are being treated as private practitioner lawyers. Your Honor, there shouldn't be a separate standard for Mr. Gibson in this case. Thank you very much. Thank you very much. We thank both counsel for your arguments in this matter, and we will take the case under advisory.